# R. A. McNEALEY, Appellant, v. R. B. BALDRIDGE, Respondent.

### Kansas City Court of Appeals, February 15, 1904.

1. **CONTRACTS: Fraudulent Representation: Failure to Read.** Where no relation of trust exists, the false representation of the opposite party as to the contents of a release is not a fraud in law when the party to whom they are made can and has an opportunity to read the paper but fails to do so.

2. **———: Rescission: Return of Consideration.** One wishing to rescind a release agreement for the fraud of the other party should as far as in his power put such other party in the condition he would have been had the release not been executed and the return of money received as consideration for the release is a *sine qua non* to its repudiation.

3. **———: False Representation: Legal Effects.** The statement that the execution of a paper would leave the maker his right of action against the defendant is but the expression of an opinion as to the legal effect and the courts can not release against such representation.

4. **———: Consideration: Composition: Homestead Rights.** A debtor in composition with his creditors and as consideration for a release conveyed his homestead rights and they executed to him a formal release. *Held,* the release rested on a good consideration.

Appeal from Sullivan Circuit Court.—*Hon. John P. Butler,* Judge.

AFFIRMED.

*Wattenbarger & Bingham* and *Wilson & Clapp* for plaintiff.

(1) The release pleaded by defendant was *nudum pactum* as between the defendant and the plaintiff. Winter v. Railway, 160 Mo. 159; Harrison Bros. v. Iron

Works, 96 Mo. App. 348. (2) The most that can be said of the release is, that, if not obtained by fraud, it would bar plaintiff from ever molesting the property turned over by defendant to Lindley Baldridge and Stuart. As shown in paragraph 1, it would not bar plaintiff from obtaining a judgment for whatever additional sums he might afterwards pay on the note, or from satisfying it out of any other property of defendant. (3) Under the pleadings and the evidence the plaintiff was entitled to go to the jury. Wells v. Adams, 88 Mo. App. 227; Cardwell v. Stuart, 92 Mo. App. 594; Goodson v. Accident Assn., 91 Mo. App. 352; Robertson v. Shepherd, 165 Mo. 360; Insurance Co. v. Owens, 81 Mo. App. 201. (4) If there was any substantial evidence offered by plaintiff to sustain the issues raised by the pleadings, the court committed error in granting a new trial on the ground he should have sustained the demurrer to plaintiff's evidence. Young v. Webb City, 150 Mo. 333; Bank v. Simpson, 152 Mo. 638; Schermerhorn v. Herold, 81 Mo. App. 461.

*Harber & Knight, Jas. R. Page* and *Childers Bros.* for respondent.

(1) Plaintiff and his assignor admit that they can read and that they could have read and understood the settlement and receipt, signed by each of them, but did not do so. The law is well settled that under such circumstances, when a party signs an instrument without informing himself of its contents, he has no cause for complaint. Gwin v. Waggoner, 98 Mo. 315; Retzer v. Packing Co., 58 Mo. App. 264. (2) The statement that plaintiff claims Stuart made to him, when he signed the receipt, "that plaintiff was only releasing the property and homestead interest and that McNealey would still retain his right of action against Benton Baldridge," if true, was simply an opinion of law, for which no relief could be granted. Ordway v. Ins. Co., 35 Mo. App. 426;

Armstrong v. Winfrey, 61 Mo. 359; Mateer v. Railway, 105 Mo. 352. (3) The plaintiff should, when he discovered the alleged fraud in the settlement and receipt, have immediately rescinded said contract and because of his failure to do so he can not maintain this action. Pub. Co. v. Hull, 81 Mo. App. 227; Smith v. Kander, 85 Mo. App. 33; Retzer v. Packing Co., 58 Mo. App. 264. (4) If plaintiff elected to disaffirm the settlement in consequence of deception practiced upon him, such election in order to avail him must have the chief and essential element of promptitude, and he must put the other party in the same situation as he was before the contract was made. Estes v. Reynolds, 75 Mo. 565. The doctrine in the Estes-Reynolds case is the law to-day, as is found in the following authorities: Clough v. Holden, 115 Mo. 359; Girard v. Wheel Co., 123 Mo. 387; Lewis v. Land Co., 124 Mo. 687; Robinson v. Sipe, 129 Mo. 209; Och v. Railway, 130 Mo. 27; Culbertson v. Young, 86 Mo. App. 277; Jarrett v. Morton, 44 Mo. 275; Alexander v. Railway, 54 Mo. App. 71; Retzer v. Packing Co., 58 Mo. App. 264; Kirk v. Seeley, 63 Mo. App. 262.

SMITH, P. J.—The defendant executed to the Sullivan County Bank his promissory note for $1,250 on which the plaintiff became surety. The defendant also executed to said bank his further note for $900 on which one Ed Calhoun became surety. He (defendant) owned a farm of 208 acres which he mortgaged to Sullivan county to secure the payment of $3,500 payable to the school fund. About the time the notes first referred to were about to mature the defendant discovered that his debts were much in excess of his assets; that his indebtedness aggregated about $12,624.75. Included in his indebtedness was a further note to the Sullivan County Bank for $2,000 on which H. C. Stuart—a brother-in-law —was surety, and also two notes to L. M. Baldridge— a brother—amounting to two thousand dollars. The defendant's rights and equities in the farm already re-

ferred to were of the value of about $2,500. The defendant on December 19, 1900, executed to said Stuart a second mortgage on said farm to indemnify the latter against any loss he might sustain by reason of his suretyship on said $2,000 note to said Sullivan County Bank. And about the same time defendant sold to his said brother, L. M. Baldridge, his cattle, hogs, hay and corn for the lump sum of $4,000, the said brother paying therefor $2,000 in cash and agreeing to surrender his two notes for $2,000. With the $2,000 so received from his brother, the defendant paid overdrafts held by the First National Bank and the Sullivan County Bank aggregating $1,000 and also paid on his $1,250 note to the Sullivan County Bank, on which plaintiff was security, $524; and on his $900 note to the last named bank, on which Ed Calhoun was surety, $376.

The defendant's creditors other than said Stuart and L. M. Baldridge on learning of the preference received by the latter expressed to them their dissatisfaction thereat, and thereupon such latter signified a willingness to have the *status quo* restored to the end that all of the defendant's creditors might *pari passu* share in the security so given. Accordingly, after a number of parleys between the creditors and defendant, a meeting resulted at which it was agreed that if the defendant would secure a release of said mortgage so given to the said Stuart and a rescission of the sale of said property to L. M. Baldridge, and a release of any preference they might have received by reason of said mortgage and sale that they—the defendant's creditors—would release and have cancelled the payments on said notes on which plaintiff and Calhoun were sureties, and that they would accept the said personal property and defendant's interest in said farm land in full satisfaction and discharge of all debts due from defendant to each of them or for which they or any of them were liable as sureties. In pursuance of this agreement the defendant secured the release of said mortgage and the rescission of said

sale of personal property and of any preference the said Stuart and L. M. Baldridge had, or claimed, and turned over to said creditors the said personal property and executed a further mortgage at their request to said Stuart, whereby he conveyed his homestead rights and equities in said farm, which personal and real property said creditors accepted and received in consideration of which the said creditors released and discharged the defendant from all of his said indebtedness.

It appears that after the transfer by the defendant of the said real and personal property it was agreed by the creditors among themselves that two of said creditors, L. M. Baldridge and A. B. Watson, should take the personal property in payment of their claims and that the said Stuart should take the real estate security, and out of it pay the other creditors sixty cents on the dollar. This was accordingly done, the said Stuart paying the plaintiff sixty per cent on the amount due on the Sullivan County Bank note of defendant on which he was surety, and also a like per cent to Ed Calhoun on the note of defendant to said bank on which the latter was surety and of which claim plaintiff afterwards became the owner by assignment. The plaintiff at the time of this payment to him executed the following instrument, to-wit:

"Milan, Mo., January 9, 1901.

"Received of J. H. C. Stuart for R. B. Baldridge, the sum of $258 in consideration whereof with other agreements I agree to pay the balance due on a certain note given the Sullivan County Bank of Milan, Missouri, dated February 22, 1900, for the sum of $1,250 upon which note my name together with that of R. B. Baldridge appears. And I further agree to release R. B. Baldridge, I. H. Stuart, L. M. Baldridge and A. B. Watson, and all the personal and real property now belonging to or heretofore owned by R. B. Baldridge, from any and all liability for any sum of money that I may pay out on account of the indebtedness of R. B. Bald-

ridge as per agreement heretofore entered into on the eighth day of January, 1901, at the residence of James A. Baldridge in Milan, Missouri.

"R. A. McNEALEY."

A similar instrument was at the same time executed by Ed Calhoun, plaintiff's assignor.

This suit is by plaintiff against defendant to recover the amount which he was compelled to pay as surety. on said note of the defendant to the Sullivan County Bank and also to recover the amount said Calhoun, plaintiff's assignor, had been compelled to pay as surety on the note of defendant to the said bank. The defendant pleaded the said agreement and release in bar of the plaintiff's action. The plaintiff in his replication admitted the agreement and the execution of the said release, but alleged that, "at the time said Stuart. presented said releases to plaintiff and his assignor for their signatures, he, the said Stuart, falsely and fraudulently represented to plaintiff and his assignor, that they were only releasing the property heretofore mentioned from any and all claims and that plaintiff and his assignor would still have an action against defendant for the balance due on the notes on which they were security. That plaintiff and his assignor did not read the releases so presented for their execution, but relied on the representations so made by the said Stuart and did not know for a long time thereafter that they had released the defendant from any and all liability on the notes which plaintiff and his assignor had paid as security for defendant. Wherefore, plaintiff says that the releases so obtained should be of no binding force or effect on him and his assignor, but should be cancelled, set aside and for naught held in this suit."

There was a trial to a jury. The defendant at the conclusion of the evidence requested an instruction in the nature of a demurrer thereto, which was by the court denied. The jury brought in a verdict for plaintiff to set aside which the defendant filed his motion,

making the ground thereof the action of the court in denying his demurrer to the evidence, which was by the court sustained; and from the order of the court setting aside the verdict and directing a new trial the plaintiff appealed.

An examination of the pleadings and evidence has convinced us that the trial court did not err in directing the new trial on the ground set forth in defendant's motion and in the order made thereon. It stands admitted by the pleadings that the plaintiff and all the other creditors of the defendant entered into the agreement hereinbefore set out and also that he (plaintiff) executed the release. It is true that the plaintiff alleged in his replication that such release was procured by fraudulent representations, but this allegation we do not think finds any support in the evidence. By the express terms of the written release, signed by the plaintiff, it is provided that in consideration of $258 ''I agree to pay the balance due on a certain note given the Sullivan County Bank for the sum of $1,250 upon which my name together with that of R. B. Baldridge appears. And I further agree to release the said R. B. Baldridge . . . from any liability for any sum of money that I may pay out on account of any indebtedness of R. B. Baldridge, as per agreement entered into January 9, 1901'' The plaintiff testified that when this instrument was presented to him by Mr. Stuart for his signature that he—Stuart—told him that he could still sue the defendant R. B. Baldridge on the notes on which he was security for him, and that he therefore falsely represented the nature of the instrument; that he—plaintiff—did not know that he was executing a release of any right or claim beyond that to the real and personal property covered by the composition agreement.

When no relation of trust and confidence exists the false representation of the opposite party as to the contents of the paper is not a fraud in law when the party

to whom the representations are made can read and has an opportunity to do so. Johnston v. Ins. Co., 93 Mo. App. l. c. 591. The common law affords every one reasonable protection against fraud in dealing; but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly or a careless indifference to the ordinary accessible means of informations. 2 Kent's Com. 485. Shank v. Waggoner, 98 Mo. l. c. 328, was where the plaintiff did not read the instrument, though he could read, and it was held that, "the mere failure of the plaintiff through his fault and neglect to read said agreement or inform himself of its contents, was not sufficient to annul or overcome the legal effect of said instrument."

In the present case the plaintiff could read and write and neglected to read the instrument, though he had ample opportunity to do so. According to the law as we have just stated it to be, the mere fact, if it were a fact, that he did not read the release, though he was not denied an opportunity to do so, would not have the effect to overcome or annul the release signed by him. The release executed by plaintiff under these circumstances was impregnable to assault on the grounds urged by him.

Again, if the plaintiff cared to rescind the release agreement for fraud of the other party he should have, as far as in his power, put such other party in the condition he would have been had the release agreement not been signed. The return of the money received as the consideration of such release was *sine qua non*, to the right to repudiate it and sue on the notes. Retzer v. Dold, 58 Mo. App. l. c. 270, and cases there cited. If the release agreement was voidable for any cause, the plaintiff had the right to affirm or disaffirm it. If he chose to disaffirm he should have made restitution of the consideration received under it. And furthermore, if Mr. Stuart did tell him at the time he signed the release agreement, as the latter testified, that he—plaintiff—was

McNealey v. Baldridge.

only releasing the property and homestead interest, and that he would still retain his right of action against the defendant on the note, it was no more than the expression of an opinion as to the legal effect of such release given by one on whom the plaintiff had no right to trust.  Courts do not relieve on account of mere opinion or judgment in such cases.  Ordway v. Ins. Co., 35 Mo. App. l. c. 434.  The only evidence which was offered to overcome and annul the release agreement was of the character just adverted to, and under the well settled principles of law, such evidence can not be given the effect to overthrow and do away with the release agreement which must therefore stand as an insurmountable barrier in the way of the plaintiff's recovery in this action.

The contention that the release agreement pleaded is a mere *nudum pactum*, can not be upheld.  It was clearly a part of and included in the composition agreement entered into between the creditors of the defendant, of whom plaintiff was one, by the provisions of which the defendant in consideration of his release and discharge from all his debts, including that on which plaintiff sues, agreed to convey his homestead and the equitable rights in his real estate and certain personal property.  This agreement defendant carried out and the release was no more than evidence of the acceptance and carrying out that agreement on the part of the plaintiff.  Certainly, the consideration within the meaning of the authorities was ample to support the defendant's covenant.  The defendant released and conveyed to his sureties property rights which he was not required by law to release.  The general rule is that in order to support an action the promise must have been made upon legal consideration moving from the promisee to the promisor; there must be either a benefit to the maker of the promise or the waiver of some legal right; a loss, trouble or inconvenience to, or a charge or obligation resting on the party to whom the promise is made.

German v. Gilbert, 83 Mo. App. l. c. 416, and the cases there cited. The plaintiff by his replication did not raise the issue of the want of consideration to support the release but if he had done so the result would not have been different. Other reasons under the authorities referred to might be suggested why the conveyance by defendant of his real and personal property rights to the plaintiff and others of his creditors constituted a sufficient consideration for the release by the plaintiff of the defendant from his legal liability to plaintiff, but that just stated we think suffices.

As far as the evidence in the present record discloses, we can not discover that the plaintiff was entitled to recover, and we shall therefore approve the action of the trial court and direct an affirmance of its order granting a new trial. All concur.